172

Harold A. Fein, Chicago, Ill., and Emanual T. Kroog, Milwaukee, Wis., for plaintiff.

Richard Gibbs and Arthur Wickham (of Quarles, Spence & Quarles), Milwaukee, Wis., for defendants Fred Trubshaw, Ernest F. Vilter and First Wisconsin Trust Co.

A. J. Englehard, (of Lamfrom, Tighe, Englehard & Pack), of Milwaukee, Wis., for defendants Fred T. Goes, William Vilter, Waldemar Kramer, Marshall and Ilsley Bank, William B. Vilter and Mrs. Elfriede S. Vilter.

DUFFY, Acting District Judge.

The complaint herein, filed October 16, 1946, alleged that the defendants were the stockholders of Vilter Mfg. Company, a Wisconsin corporation; that in the month of January, 1943, defendants employed plaintiff, a broker with offices in Chicago, Illinois, to find and procure a buyer for all of the capital stock of Vilter, that defendants then and there agreed to pay plaintiff for the services to be rendered by him, a fee equivalent to 5% of the price paid for the capital stock of Vilter by any purchaser procured by plaintiff. The complaint further alleged that plaintiff procured a buyer ready, willing and able to complete the purchase of said stock at the price same had been offered by defendants, to wit, $1,200,000, and that plaintiff thereby became entitled to a commission of $60,000.

On November 12, 1948, plaintiff moved to amend the complaint to allege that defendants engaged plaintiff in January, 1943, to find and procure a buyer for all of the capital stock of Vilter owned and held by them or alternatively to find and procure a buyer to purchase all of the assets of Vilter. The court allowed this amendment.

Defendants contend that the prospective purchaser procured by plaintiff was not ready, willing and able to buy; that said prospective purchaser refused to enter a binding agreement which could have been enforced by Vilter or its stockholders; and that plaintiff had no agreement satisfying Sec. 240.10, Wis.Stats., better known as "The Statute of Frauds."

On January 13, 1943, plaintiff contacted Vilter by letter asking for details of its operations and apparently inquiring whether the business was for sale. Vilter replied by letter of January 18, the letter being signed, "The Vilter Mfg. Company, by F. T. Goes, Vice President." From information furnished by Vilter, plaintiff prepared a statement to be presented to one Owen Coon of Chicago, suggesting that the latter make a survey of the Vilter plant. Shortly thereafter plaintiff came to Milwaukee and

was met by Goes and Tilton, who took plaintiff to the Vilter plant. Tilton, although not a stockholder or director, was the executive vice president of Vilter. On February 4, 1943, Vilter, by letter signed by Goes and addressed to plaintiff, broke off the pending negotiations.

On March 27, 1944, plaintiff inquired of Tilton, "If the project you and I were working on about a year ago is still available, I really believe that I have the right contact now * * *." Many long-distance calls followed and considerable correspondence was exchanged between plaintiff and Tilton, but Tilton's letters were customarily signed, "The Vilter Manufacturing Company." In a letter dated June 1, 1944, plaintiff informed Tilton, " * * * our fee is to be 5% of the total amount of the sale * * *." Negotiations continued and on February 27, 1945, plaintiff and Coon came to Milwaukee, met with Goes and Tilton, and made an inspection of the plant. On March 7, 1945, a meeting was held in Milwaukee, in the law offices of Miller, Mack and Fairchild, at which a representative of the First Wisconsin Trust Company, which was a trustee under the last will of Theodore O. Vilter, William Vilter, E. F. Vilter, Fred Trubshaw, who was a trustee under the Theodore Vilter Estate, and Attorney Foley were present, as well as plaintiff. Plaintiff proposed that the stockholders sell the assets of Vilter to Coon for $1,200,000, and stated that his commission would be 5%. The stockholders held out for a price of $1,300,-000, and when the meeting broke up plaintiff stated he would endeavor to obtain an offer from Coon in that amount.

On March 9 and March 12 the defendant stockholders signed an agreement with each other that they would sell their stock in Vilter for $1,200,000 on terms of $900,000 cash and a mortgage for $300,000 payable in installments over five years, and said agreement authorized a broker's commission of 5%. The agreement also contained the following: "4. It is understood that reference herein to disposition of the stock of the Company shall include acquisition thereof by the Company or sale of the assets of the Company for a price which will net to the stockholders the same amount as would be the case if the stock were sold as herein described. * * *"

Plaintiff was unable to get an increased offer from Coon and after some correspondence and telephone calls another meeting was held in Milwaukee on April 2, 1945, at the offices of Miller, Mack and Fairchild. Plaintiff and Coon were present, as were Tilton, Goes, and all stockholders except Mr. Kramer, Mrs. Elfriede Vilter, or any representative of the Marshall and Ilsley Bank, a trustee for the Estate of William O. Vilter. After considerable discussion, although it was generally understood by all present that Coon was agreeable to eventually purchasing the assets of Vilter for $1,200,000 with a payment of $900,000 in cash and a mortgage for the balance, Coon would not bind himself at the meeting, in writing or orally, to make such purchase. He was asked to make an earnest payment and refused. It was suggested that he sign a preliminary agreement and again he refused. Coon was about to leave for a vacation in Mexico and he stated he desired to have his lawyer, Aaron, come to Milwaukee to inspect paper, such as patents, abstracts, and contracts, and to confer with Vilter's attorneys. He also expressed a desire to have his engineer and his auditor make further investigations. He expressly stated at the meeting that he wanted it understood that he was not binding himself to purchase the assets and that the company was not bound to sell the property to him.

Before Coon returned from Mexico, Attorney Foley had devised an unusual and unique plan whereby a charitable trust which he and other attorneys organized took over the stock of Vilter, and the former stockholders (the defendants herein) received $1,300,000 in cash. Neither plaintiff nor Coon knew of this development until it was announced in the press as an accomplished fact on or about May 1. On May 10, plaintiff sent a statement to the Vilter Manufacturing Company, "To services rendered re sale of Vilter Manufacturing Company—$60,000.00." Thereafter this suit was commenced against the stockholders.

**174**

■ Defendants' contention that the plaintiff represented the Vilter company and not the stockholders cannot be sustained. All of the stockholders knew of the negotiations which were being carried on, and after the March 7 meeting signed a written agreement whereby they committed themselves as stockholders to pay a 5% commission based upon a sale of the stock or the assets at a price of $1,200,000.

■ I do think, however, that plaintiff has not sustained the burden upon him to prove that he produced a buyer ready, willing and able to purchase upon terms agreeable to the defendants. Some contention is made by defendants that the plaintiff has not made a showing that Coon or the Wacker Company which he represented had financial ability to consummate the proposed deal. I think plaintiff has made a sufficient showing in that respect. But what is fatal to plaintiff's case is that on April 2 Coon refused to be bound to carry out the terms of the proposed sale discussed at that meeting, and because he subsequently never made any agreement which was binding on him.

On April 2 Coon, about to leave for a vacation in Mexico, refused to make a down payment or to deposit earnest money; he likewise refused to sign a preliminary agreement. He wanted to be free on his return, after consulting his attorney, his engineer and his auditor, to turn down the proposed deal if he so desired. Neither Vilter nor the stockholders could have compelled him to have purchased either the assets or the stock. With this loophole, the stockholders embraced the opportunity to sell their stock elsewhere for all cash and for $100,000 more than Coon had said he was agreeable to paying for the assets of the company if a deal with him went through. Under such circumstances I think plaintiff did not produce a purchaser ready and willing to buy at the stipulated terms.

If the situation were reversed and Coon had been willing to make a binding contract to purchase, and the defendants had refused to sell, plaintiff would be entitled to recover. Paul v. Markle, 250 Wis. 81, 26 N.W.2d 276. That case holds that where a broker affords the owner an opportunity to make a binding contract with a proposed purchaser on the authorized terms, he has done all that is required of him. While plaintiff did all he could to consummate the sale, his prospective purchaser was either unwilling or not ready to buy upon the terms discussed, and the plaintiff thus did not become entitled to a commission.

The briefs contain an interesting discussion as to the applicability of the Statute of Frauds, Wis.Stats., Sec. 240.10. However, this question need not be considered in view of my conclusion that plaintiff did not produce a purchaser who was ready and willing to buy. Judgment must go for the defendants whose attorneys will prepare findings of fact and conclusions of law in conformity with this opinion, submitting same to opposing counsel prior to presentation to this court.

The motion made by plaintiff to amend the caption of the case by naming three defendants, now listed as trustees under the last will and testament of William O. Vilter, as co-executors under said will and testament will be denied.